Mr. Justice Scott delivered the opinion of the Court. The case was tried and determined by the Court, the parties having waived a trial by jury. A motion was made and overruled for a new trial upon the ground that the finding of the Court was contrary to law and evidence. No exception was taken to the testimony, nor was any point of law saved. The only question presented, then, is, whether or not the finding and judgment in this case was “ so much against the weight of evidence as, at first blush, to shock our sense of justice and right.” Drennen vs. Brown, 5 Eng. 140. Along with the testimony that was competent and relevant to the issue, the bill of exceptions presents some that was purely hearsay, and, as such, totally inadmissible, not only that it supposed better evidence, but on account of its intrinsic weakness and incompetency to satisfy the mind as to the existence of the specific fact of part payment within the bar that was in this case sought to be established. And although, as this legal and illegal testimony has been indiscriminately produced before the Court without objection, it all has to be regarded in considering the question before us, otherwise the same case that was apparently presented to the Court below by the motion for a new trial would not be reviewed by us, still that does not confer upon this hearsay evidence any new attribute in point of weight. Its nature and quality in this respect remaining the same, so far as its intrinsic weakness and incompetency to satisfy the mind are concerned. Had the Bank in this case been content to read the note in evidence, and after proving by evidence that the credit endorsed had been in fact entered there before the efflux of a sufficient time to perfect the statute bar, and had then read the endorsement so authenticated, and no other testimony had been adduced by either side to repel the presumption of law arising upon this evidence, she would have made out her case and would have been entitled to a verdict. Not that this testimony would have conclusively established a part payment and its appropriation by the debtor to the particular debt thus in part paid, but simply that such proof had been made as would have authorized the finding of both facts in the absence of other evidence to repel the prima facie case thereby made. But, in this case, the Bank seems not to have been content with a prima fade case, but preferred to march directly up to the main fact to be proven, and, as often happens under such circumstances, overset her prima facie case, not only by cutting off all connection between the defendant and the alleged part payment otherwise than through the dubious and unreliable channel of purely hearsay evidence, but also by proving facts calculated to repel the presumption of the main fact of part payment. She proved that, instead of the money having come into her hands in the simple aspect of a part payment of an entire demand, it had in fact come to hand in the complex aspect of one item only of an entire proposition to settle fully not only the demand sued on, but two other demands, and that having rejected the proposition, she had nevertheless, of her own motion, kept the money and entered one-third of the amount to each of these demands; but offered no proof that this arrangement had been acquiesced in by the defendant. It is conceded that this proposition, accompanied by the money, and the new note for the balance that the money did not discharge, is very satisfactory evidence that all three of the entire demands were then due and unpaid: and it is also conceded that that is the identical point, and no other, that part payment specifically appropriated does in legal effect establish. Nevertheless, neither the one nor the other does more emphatically establish this point than does an express verbal acknowledgment of the debt accompanied by an express verbal promise to pay it. Yet this latter does not revive the debt, because the statute requires that an acknowledgment or promise, to have this effect, shall be in writing; and, in the same sense that an acknowledgment or promise in writing is a specific mode of revival, so is part payment, appropriated as such, a specific mode of revival, or of creating a new point from whence the statute will again commence to run. And there are but these two modes. Part payment of itself abstractly, or in its broad sense, cannot have this effect, as will be at once seen by the case where a part only of an entire demand might be paid, but the payment be accompanied with the express denial and protestation that any more was due, (Ann Wainman vs. Rynman, 1 Welb. Hurl. & Gor. R. 118,) because the circumstances attending such apart payment would effectually repel the presumption of the admission that the whole debt was due, that would otherwise arise from the deliberate act of paying in part an entire demand with- ' out further word or act than such part payment. And such part payment would, therefore, not be made under such circumstances as would warrant the jury in inferring a promise to pay the balance of the debt. Nor would part payment by a stranger do, or a part payment by an agent who was only authorized to pay the claimant a part of the entire debt in discharge of the whole, and, upon this being refused, the agent, without authority, paid the sum as part payment only, and it was accepted as such only; because although here was a part payment, it was not a voluntary part payment or payment by authority of the debtor. (Linsell vs. Bonsor, 2 Bing. N. C. 241. 29 Eng. Com. Law Rep. 319.) Nor is it by any means clear that a part payment generally, where the creditor held two clear and undisputed debts, would take either of such debts out of the statute for want of a specific appropriation to the one debt or the other. (Burns vs. Bolton, 2 Man. Grang. & Scott 476. 52 Eng. Com. Law Rep. 474.) It is indispensable that either an actual part payment of, and appropriation to, the particular debt, by the party or by his authority, be shown by the evidence; or else that such facts and circumstances be proven as will authorize the inference of the part payment and appropriation by the party or his authority. And where such proof is made, the j ury will be warranted in inferring a promise to pay the residue of the debt, such promise standing in law upon ah equality with an express promise. Alston vs. State Bank, 4 Eng. 459. As to the testimony, we have already remarked that, so far as the endorsement of part payment was concerned, that was un-moored by the subsequent evidence showing that the money had come in hand accompanied by a proposition to take that and a ¡note in discharge of the demand sued on and two other demands. It does not appear whose note it was, and therefore as the note itself was not produced, nor was it shown who made the note, the note cannot be relied upon as a promise in writing to pay the residue not discharged by the money. The substance of the proposition was that the money and the note together should be taken in full discharge of the demands held by the Bank. It appears, however, that the Bank rejected the proposition as a whole, but kept the money, and, of its own motion, entered one-third of its amount to the credit of each demand. The note seems to have been rejected because it was not sufficiently secured. Whether it was of any value at all, does not otherwise appear. Nor does it appear what object the defendant had in view in making the proposition otherwise than that it contemplated, as it would seem, a discharge of the three demands held by the Bank; as the evidence is that the “money was to pay-the calls and interest,” and “ that the note should be taken for the residue of the amount due on all three of the notes.” Nor is there any evidence showing any subsequent recognition or approval by the defendant of the course pursued by the Bank in rejecting the note and entering the money as a credit on the three demands, but the evidence shows that both were done without any concurrence on the part of the defendant. Looking at the whole evidence, then, without any regard to the intrinsic weakness of some of it, the case presented by it would seem to differ not very wide in principle from the adjudged case above cited, where a part of the debt was offered in discharge of the whole, which being refused the money was without authority credited as a part payment only. In the case before us, for any thing that appears in the testimony, the note sent along with the money may have been valueless, and this is not improbable, as it was rejected by the Bank because “the securities were insufficient,” and, for any thing that appears to the contrary, it may not have been the note of the defendant, but of third persons, and therefore the whole proposition may have been one of compromise, where less than the whole debt was in truth offered, part in money and part in a note of little or no value. It would not, then, be so strong a case as that above cited from 52 Eng. Com. Law R. 474, of a payment generally, where the creditor held two clear and undisputed debts (if that be law, as we shall not now determine, as that question may hereafter arise): or the case of payment generally to a creditor, who holds two demands, one of which is barred and the other not, and the creditor, in the exercise of his right of appropriation, places the amount to the credit of the stale demand; which case has been long and uniformly held to be no part payment within the statute although a credit to the stale demand, unless the debtor specifically appropriated it to the other at the time of paying it. But the case may be barred in another light, and that may have been the light in which it was passed upon by the Court below. That is to say, full weight may be given to the legal testimony and none to that that was hearsay and incompetent. And, in this view, the presumption arising from the endorsement is effectually repelled by the other testimony of Mr. Pulliam, as to the facts connected with its entry upon the note, and all connection between the payment and the defendant is cut off entirely. So that, in no view, can we say that this case comes within the rule which we have above cited as to new trials. Let the judgment be affirmed. Note. — The case of The Bank of the State of Arkansas vs. William B. Wooddy, Abraham Whinery, and Mathew S. Wooddy, founded on a note for $754, dated 6th February, 1842, payable six months after date, commenced on the 23d July, 1847, contained the same issues, was tried at the same time on the same evidence, judgment the same, motion for a new trial overruled, exception and writ of error as in preceding case. The case having been argued here by Caeholl, for the plaintiff, and S. H. Hemp-stead, for the defendants, the judgment on the preceding opinion was in all things affirmed.